DECISION
{¶ 1} Relator, Berl Graves, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate that portion of its order denying temporary total disability ("TTD") compensation for the closed period March 18, 2003 through July 21, 2004, and to enter an amended order that grants said compensation for that period.
 {¶ 2} Pursuant to Civ.R. 53(D) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate found that the commission did not abuse its discretion in denying TTD compensation for said period based upon Dr. Stern's office note indicating that relator did not have any flare-ups during said period, coupled with the fact that relator did not seek any medical treatment for the allowed conditions during said period. This is some evidence supporting the commission's determination that relator's injury was not sufficiently symptomatic during the period at issue to justify TTD compensation. Therefore, the magistrate has recommended that we deny the requested writ of mandamus.
 {¶ 3} Relator has filed objections to the magistrate's decision arguing the magistrate should have found that the commission abused its discretion by failing to explain why it found relator's lack of symptoms and treatment during the period in question more significant than the conclusions stated in Dr. Stern's report. Relator cites State ex rel. Bowie v. GreaterRegional Transit Auth. (1996), 75 Ohio St.3d 458 in support of his argument. However, as respondent points out, Bowie only held that "reports which post date a period of claimed disability may constitute some evidence in support of a requested award and are not inherently unreliable." Bowie does not require the commission to rely upon the doctor's opinion. Here, the commission cited to and relied upon other evidence indicating that relator was not sufficiently symptomatic during the timeframe in question to justify TTD compensation. Because there is some evidence supporting the commission's decision, we find that the commission did not abuse its discretion. Therefore, we overrule relator's objections.
 {¶ 4} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
Brown and French, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Berl Graves, : Relator, : v. : No. 05AP-1102 Industrial Commission of Ohio et al, : (REGULAR CALENDAR) Respondents. :
 MAGISTRATE'S DECISION Rendered on June 26, 2006 Clements, Mahn Cohen, LPA Co., and Edward Cohen, for relator.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 5} In his original action, relator, Berl Graves, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate that portion of its order that denies temporary total disability ("TTD") compensation for the closed period March 18, 2003 through July 21, 2004, and to enter an amended order that grants TTD compensation for that period.
Findings of Fact:
 {¶ 6} 1. On May 24, 2002, relator sustained an industrial injury while lifting a picnic table. He was employed at the recreation department for respondent, City of Reading, a state-fund employer. The industrial claim was initially allowed for "lumbosacral sprain" and was assigned Claim No. 02-405177.
 {¶ 7} 2. The commission awarded TTD compensation beginning July 12, 2002.
 {¶ 8} 3. Effective March 17, 2003, the commission terminated TTD compensation on grounds that the lumbosacral sprain had reached maximum medical improvement ("MMI").
 {¶ 9} 4. On October 14, 2004, relator moved for additional claim allowances.
 {¶ 10} 5. Following a December 20, 2004 hearing, a District Hearing Officer ("DHO"), issued an order granting an additional claim allowance for "herniated disc at L 4-5 and aggravation of pre-existing spondylolisthesis at L5-S1."
 {¶ 11} 6. The employer administratively appealed the DHO's order of December 20, 2004.
 {¶ 12} 7. Following a February 2, 2005 hearing, a Staff Hearing Officer ("SHO") issued an order affirming the DHO's order of December 20, 2004. On February 26, 2005, another SHO mailed an order refusing the employer's administrative appeal from the SHO's order of February 2, 2005.
 {¶ 13} 8. Earlier, on January 9, 2003, relator visited his treating physician, Errol J. Stern, M.D. In his January 9, 2003 office notes, Dr. Stern wrote:
The patient still has back pain. He is very tender in the lumbosacral junction with some gluteal radiation. He is more tender on the left and radiates into the left sacroiliac joint more than the right. He has a hard time coming to an erect posture. He has no neurological deficit of the lower extremities.
I think the patient needs to be in a back therapy program. This would help his condition. We would like to set that up for him as soon as we get approval. I would like him to have therapy three times a week for six weeks. Also, because of his significant spasms and difficulties right now, I did a trigger point injection of 160 mg of Depo-Medrol and Marcaine into the left gluteal area the area of the most acute pain with immediate improvement.
I put him back on Celebrex 200 mg a day #30, Vicodin for pain #60.
We will see him back for continuing care in one month. We will start physical therapy as soon as we get approval. He is still temporarily and totally disabled and probably will be so until the first of March.
 {¶ 14} 9. Relator's next visit with Dr. Stern occurred July 22, 2004, approximately one and one-half years after the previous visit. Dr. Stern wrote:
DISPOSITION:
1. We injected the right lumbosacral area with 160 mg of Depo-Medrol and Marcaine. That has always worked well for the patient in the past and gives him relief.
2. He is advised to continue Vioxx 25 mg a day and Vicodin, which he has been taking. He is given prescriptions to get him some more.
3. He is to be followed back up in one week for continuing care. If he is not better, an epidural steroid may need to be ordered.
4. We are going to request the injection from the Industrial Commission. This is first really severe flare up he has had in a year and a half.
The patient has not been seen for a year and a half. He is here today because he has a flare up of back problems with pain radiating down the outer lateral aspect of his right leg. This is due to a preexisting spondylitic condition at the L4-5 area, spondyliolisthesis at the lumbosacral junction aggravating this.
* * *
Clinically, he is having a flare up of back pain right now, spontaneous onset two weeks ago. He has not been able to sleep. It goes down the outer lateral aspect of his leg, goes down to his foot on the outside of his leg with pain radiating down the outer lateral aspect of his thigh, his leg and goes down to the right ankle. Positive straight leg raising on the right, negative on the left. Deep tendon reflexes are all hypoplastic at the knees and ankles bilaterally. It is hard to tell. Sensory disturbances of hyperesthesia following the S1 distribution down the right leg.
 {¶ 15} 10. On October 7, 2004, Dr. Stern completed a C-84 which certified a period of TTD from September 5, 2002, to an estimated return to work date of November 1, 2004.
 {¶ 16} 11. April 28, 2005, relator moved for TTD compensation beginning March 17, 2003, the date it had been terminated.
 {¶ 17} 12. Following a July 27, 2005 hearing, a DHO issued an order stating:
It is the order of the District Hearing Officer that the C-86 motion, filed 04/28/2005, is granted to the extent of this order.
The District Hearing Officer grants the injured worker's request for temporary total disability due to newly allowed conditions but orders the temporary total disability paid from 07/22/2004 to 06/23/2005 based upon the medical records of Dr. Fisher, Dr. Stern, the MRI of 08/04/2004 and Dr. Gibson. The District Hearing Officer finds that the injured worker was found at maximum medical recovery back on 03/17/2003 and the injured worker did not receive any treatment for the period of March 2003 to July 2004 which is when the MRI of August 2004 discovered a new herniated disc which was then added to the claim. Based upon the newly discovered conditions in August 2004 and the amended conditions later that year the District Hearing Officer finds that it is reasonable to start the temporary total disability as of the first date of active treatment for these conditions reflected in the file as to be 07/22/2004.
The District Hearing Officer finds that the injured worker's allowed medical conditions has reached maximum medical improvement, in that his conditions will, with reasonable probability, continue for an indefinite period of time and that the injured worker has reached a treatment plateau at which no fundamental, functional or physiological change can be expected, within reasonable medical probability, in spite of continued medical or rehabilitative procedures.
The Hearing Officer further finds that the injured worker's temporary total disability compensation shall be and is hereby terminated as of 06/23/2005 based upon the report of the treating doctor, Dr. Stern of 06/28/2005. The District Hearing Officer finds that the Bureau of Workers' Compensation terminated temporary total on that basis by Bureau of Workers' Compensation order of 07/21/2005.
* * *
This order is based upon the reports of Dr. Stern of 11/18/2004, 07/22/2004 and 06/28/2005, Dr. Fisher's report of 7/20/2005, Dr. Gibson's report of 06/07/2005 and the MRI of 08/04/2004.
 {¶ 18} 13. On June 28, 2005, Dr. Stern completed another C-84 which certified TTD compensation beyond November 1, 2004 to June 24, 2005. On the C-84, Dr. Stern opined that relator is at MMI effective June 24, 2005.
 {¶ 19} 14. Relator administratively appealed the DHO's order of July 27, 2005.
 {¶ 20} 15. Following a September 1, 2005 hearing, an SHO issued an order stating:
The order of the District Hearing Officer, from the hearing dated 07/27/2005, is affirmed with additional reasoning.
The issue to be decided is the request for temporary total disability compensation. All parties waive notice of hearing of employer's appeal filed August 16, 2005 from the District Hearing Officer hearing order which was mailed August 2, 2005. The parties are also considering the injured worker's appeal filed August 5, 2005.
The Staff Hearing Officer grants the C-86 motion filed April 28, 2005 to the extent of this order. The Staff Hearing Officer finds that the injured worker was previously found to have reached maximum medical recovery back on March 17, 2003. The Staff Hearing Officer finds that the injured worker did not receive any medical treatment for the period of March 2003 to July 2004. The Staff Hearing Officer finds that the MRI of August 2004 discovered a new herniated disc which was then added to the workers' compensation claim. The Staff Hearing Officer finds that based upon the newly discovered conditions in August 2004 and the amended conditions added into the claim the Staff Hearing Officer finds that it is appropriate to start temporary total as of the first date of medical treatment for these conditions reflected in the file to be July 22, 2004.
The Staff Hearing Officer finds that temporary total is to be paid from July 22, 2004 to June 23, 2005 based upon the medical records of Dr. Fisher, Dr. Stern and the MRI scan of August 4, 2004. The Staff Hearing Officer denies the injured worker's request to begin the temporary total on March 18, 2003. The Staff Hearing Officer finds that the injured worker's request for the period of temporary total from March 18, 2003 through July 21, 2004 is not supported by medical evidence on file documenting the injured worker's inability return to work for this period of time. The Staff Hearing Officer further finds that the injured worker was not receiving any medical treatment during this time and thus there is no contemporaneous medical records to cover this period.
The Staff Hearing Officer finds that the injured worker's allowed conditions have reached maximum medical improvement, in that his conditions will, with reasonable probability, continue for an indefinite period of time and that the injured worker has reached a treatment plateau at which no fundamental, functional or physiological change can be expected, within reasonable medical probability, in spite of continued medical or rehabilitative procedures.
The Staff Hearing Officer further finds that the injured worker's temporary total compensation shall be and is hereby terminated as of June 23, 2005 based upon the report of the treating doctor Dr. Stern. The Staff Hearing Officer notes that the Bureau of Workers' Compensation terminated temporary total on that basis by the Bureau of Workers' Compensation order of July 21, 2005.
This order is based upon the medical reports of Dr. Stern dated November 18, 2004, July 22, 2004 and June 28, 2005, the report of Dr. Fisher dated July 20, 2005 and the MRI scan of August 4, 2004.
 {¶ 21} 16. On September 16, 2005, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of September 1, 2005.
 {¶ 22} 17. On October 17, 2005, relator, Berl Graves, filed this mandamus action.
Conclusions of Law:
 {¶ 23} The issue is whether the commission abused its discretion by denying TTD compensation from March 18, 2003 through July 21, 2004. Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus as more fully explained below.
 {¶ 24} As previously noted, Dr. Stern certified on the C-84 a period of TTD compensation covering the claimed period of disability at issue here. Relator sought rein-statement of TTD following the date of its termination on MMI grounds, i.e., March 17, 2003. The commission instead started TTD compensation effective July 22, 2004, the date relator visited Dr. Stern after a one and one-half year hiatus. Denial of TTD compensation, prior to July 22, 2004, was based on the following grounds:
The Staff Hearing Officer finds that the injured worker's request for the period of temporary total from March 18, 2003 through July 21, 2004 is not supported by medical evidence on file documenting the injured worker's inability to return to work for this period of time. The Staff Hearing Officer further finds that the injured worker was not receiving any medical treatment during this time and thus there is no contemporaneous medical records to cover this period.
 {¶ 25} In some situations, absence of treatment for an extended period during a claimed disability can cast considerable doubt on the reliability of the doctor's TTD certification where medical treatment would normally be expected if the allowed condition were causing disability. See State ex rel. Kroger Co.v. Morehouse (1995), 74 Ohio St.3d 129, 134; State ex rel.Simon v. Ind. Comm. (1994), 71 Ohio St.3d 186, 188.
 {¶ 26} It is undisputed that relator did not consult with nor seek treatment from his treating physician, Dr. Stern, during the approximate one and one-half year period between January 9, 2003 and July 22, 2004.
 {¶ 27} Dr. Stern's July 22, 2004 office note undermines his C-84 certification of TTD compensation for the period at issue prior to July 22, 2004. Dr. Stern's July 22, 2004 office note states: "This is [relator's] first really severe flare up he has had in a year and a half."
 {¶ 28} Based upon Dr. Stern's July 22, 2004 office note, the commission could draw the inference that relator's injury was not sufficiently symptomatic during the period at issue prior to the July 22, 2004 office visit to justify temporary total disability.
 {¶ 29} In light of Dr. Stern's July 22, 2004 office note, the absence of medical treatment during the period at issue is clearly grounds for denial of TTD compensation during that period.
 {¶ 30} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 s/s Kenneth W. Macke 
KENNETH W. MACKE Magistrate